[Criminal No. 404.   Filed June 26, 1916.]

[158 Pac. 640.]

## PABLO RAMERIZ, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW — INSTRUCTIONS — MITIGATION OR JUSTIFICATION — BURDEN OF PROOF.—In a trial for murder, an instruction that, the commission of the homicide by the defendant being proven, the burden is on him to prove justification or mitigation, etc., following Penal Code of 1913, section 1046, *held* not error, as assuming that defendant committed the homicide.

2. HOMICIDE—BURDEN OF PROOF—REASONABLE DOUBT.—The commission of homicide must be proved beyond a reasonable doubt, whether the evidence be that of eye-witnesses, attending circumstances, or the admission of defendant in reliance on self-defense, or legal justification, or excuse.

3. HOMICIDE—APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTIONS NOT PREJUDICIAL.—Under Constitution, article 6, section 22, and Penal Code of 1913, sections 1170, 1289, a conviction for murder will not be reversed for an erroneous instruction, where the evidence so conclusively demonstrates the guilt of defendant that no other verdict would have been proper.

4. HOMICIDE—EVIDENCE—SUFFICIENCY.—Where there was testimony tending to show that after deceased was fatally shot, but before life was entirely extinct, defendant struck him with a heavy rock, evidence *held* sufficient to sustain conviction for second degree murder.

[As to killing or assaulting friend or relative as provocation sufficient to reduce homicide from murder to manslaughter, see note in **Ann. Cas. 1914B, 457.**]

APPEAL from a judgment of the Superior Court of the County of Cochise. A. C. Lockwood, Judge. Affirmed.

Mr. O. Gibson and Mr. Lee O. Woolery, for Appellant.

Mr. Wiley E. Jones, Attorney General, and Mr. Leslie C. Hardy and Mr. Geo. W. Harben, Assistant Attorneys General, for the State.

ROSS, C. J.—Appellant appeals from a judgment of conviction of murder in the second degree. He presents two assignments of error.

"The first is that the court committed prejudicial error by reading as part of the charge to the jury paragraph 1046 of the Penal Code; and the second is that the verdict is contrary to the evidence."

At the trial the facts developed that appellant and one Leandro Maldonado, at about 12:30 o'clock of the night of June 27, 1915, were proceeding along the main highway from Lowell to Bisbee. They were carrying a number of bottles of mescal and three canteens of mescal that they had brought from Naco. Walter Brooks, who was head watchman for the Copper Queen Mining Company, in some way not explained by the evidence, the appellant, and Maldonado came together and became involved in a fight, resulting in Brooks' death. Five shots were fired, one of which took effect in the body of Maldonado, and at least two struck the deceased. Maldonado's testimony was that deceased attacked him without any warning; that deceased shot at him once or twice, when they grappled with each other; that in the struggle they fell and rolled off the grade into an arroyo. He then wrested the pistol from Brooks and shot him. Appellant, who was then standing near by and over them, told Maldonado to "shoot him another shot, finish killing him," which he did; that then, "believing he was dead, I says to my partner, 'Let him alone; he is dead now; let's go.'" Appellant then said: "Wait for me, partner; let me throw some rocks on him."

About 200 feet from where this took place Luz Romero and her son, Gregorio Romero, lived. Their attention was attracted by the gunshots and also the talk of the combatants. They testified to seeing one of the parties lift rocks and drop or throw them toward the ground, and to hearing groans proceeding from that point as the rocks were thrown. They saw two parties leave the scene of trouble, one going toward Bisbee and the other in the direction of Lowell. A few minutes thereafter the body of deceased was found with his head and face so crushed and beaten as that his friends were not able to recognize him. A number of rocks were lying around near and on his head, bespattered with blood and covered with hair. Appellant's hat was found lying near the corpse, and a few days later, when he was arrested, he was wearing the deceased's hat.

Appellant testified in his own behalf, and denied that he took any part in the fight, claiming that he ran away about the time Maldonado and deceased grappled with each other. It is claimed by appellant, under this state of the case, the court committed error in giving to the jury this instruction, which is a rescript of paragraph 1046 of the Penal Code of 1913:

"Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

And in support of that contention he cites us to *People* v. *Tapia,* 131 Cal. 647, 63 Pac. 1001. In the Tapia case the court did severely criticise this instruction, and on account of it and other errors reversed the case. It was there said that the instruction "is applicable only when a defendant sets up circumstances of mitigation, excuse or justification of an admitted or proved homicide." While the court criticised the instruction in the Tapia case, and we think rightly so under the facts, we are well satisfied, from other things said in the opinion, that it alone would not have been considered sufficient grounds to reverse the case. For instance, the court said, in commenting upon a statement of the trial judge in refusing motion for new trial to the effect that he did not believe some of the evidence of the prosecution:

"We cannot avoid a somewhat strong impression that the defendant has been wrongfully convicted of the high crime of murder in the first degree; and, as in such a case, a very slight error of law committed during the trial might have improperly influenced the jury, it is our duty to look with very close scrutiny into the assignments of error. Of course, a judgment will not be reversed for an erroneous ruling, where it appears that it could not have been prejudicial to the party who complains of it; but, considering the peculiar character of the evidence in the case at bar, it cannot be said that certain errors which we shall notice were not prejudicial. . . . In conclusion, we desire to say that this decision is based upon the very peculiar features of this case as above shown,

and that in many cases the errors above noticed would not call for a reversal.''

The objection to the instruction is that it assumes that appellant committed the homicide. We do not think it fairly bears that construction. ''The commission of the homicide by the defendant being proved'' is the language of the instruction; that is not equivalent to a statement that it had been proved—it was still left as a fact to be ascertained by the jury from the evidence. Proof of the commission of the homicide by the appellant, whether it be his admission as in self-defense, or legal justification, or excuse, or evidence of eye-witnesses and attending circumstances, must be established to the satisfaction of the jury beyond any reasonable doubt. As was said in *People* v. *Grill,* 151 Cal. 592, 91 Pac. 515, in discussing this instruction:

''The phrase objected to was not inserted in the instruction as a statement by the court that the commission of the homicide by the defendant had been proved. It was meant as an expression of a condition or event, upon which the succeeding part of the instruction would become applicable, and that is its true rhetorical meaning when considered in connection with the text. Its signification is the same as if the sentence began thus, 'When, upon a trial for murder, the commission of the homicide by the defendant has been proved,' etc. Thus understood, it does not constitute a statement of the fact by the court.''

Maldonado, who was a witness on the part of the prosecution, gave evidence which, if believed by the jury, showed a complete defense. Maldonado and appellant were companions traveling together, and the facts and circumstances, aside from the testimony of appellant, all go to show that they were acting together. The effect of Maldonado's testimony was to relieve the appellant from ''the burden of proving circumstances of mitigation, or that justify or excuse'' the homicide. The instruction, in effect, told the jury that, if they found the appellant committed the homicide, he must establish his defense of mitigation, justification or excuse by burden of proof, unless the prosecution's proof tends to show that the crime committed only amounts to manslaughter, or that the appellant was justifiable or excusable, in which case there would be no burden of proof cast upon him.

Granting that this instruction might better not have been given, yet we doubt if it had any influence upon the verdict of the jury. A careful reading of the evidence satisfies us that no other reasonable or just disposition of the case could have been made. We think upon the whole case it satisfactorily appears that substantial justice has been done, and that in the absence of such instruction the verdict would have been the same. This being the case, under the Constitution and the laws, the case ought not to be reversed, even though it was technical error to give the instruction. Section 22, article 6, Constitution. Sections 1170 and 1289, Penal Code 1913.

The contention that the verdict is contrary to the evidence is based upon the allegation in the information as to the means used in killing the deceased. The charge is, "did . . . kill and murder one Walter Brooks . . . by . . . beating him with rocks and shooting him." It is urged by appellant that, granting the evidence shows that he did beat the deceased with rocks, it was after the deceased had been fatally and mortally wounded, and after the extinction of life. If it were possible to disconnect appellant from the trouble prior to the throwing of the rocks, still the evidence shows that the very instant the rocks were being thrown at Brooks, many and repeated groans were heard, thus indicating that life was not extinct.

We think the evidence amply sustains the verdict. The judgment is affirmed.

FRANKLIN and CUNNINGHAM, JJ., concur.

---

For authorities on the question of right of court to instruct jury in language of code in prosecution for homicide, see note in 19 L. R. A. (N. S.) 829. And as to applicability of rule of reasonable doubt to self-defense in prosecution for homicide, see notes in 19 L. R. A. (N. S.) 483 and 31 L. R. A. (N. S.) 1166.